May it please the Court, Bradley O'Connell representing Geraldine Darden, and I'd like to reserve about three minutes for rebuttal. By virtue of this Court's expansion of the COA, there are now three issues in play in this appeal. In light of limited time, although I strongly believe that the record compels an evidentiary hearing, I'd like to concentrate my remarks on the two instructional errors, because I believe the most appropriate disposition of this appeal is a straight reversal with directions to grant the writ now on the basis of the instructional error without the necessity for an evidentiary hearing. Geraldine Darden had three theories of defense, reasonable defense, imperfect self-defense, and heat of passion based on provocation. The Court wholly removed from the jury the first two theories of defense, and it delivered conceitedly erroneous instructions limiting the scope of the one defense which did go to the jury, the heat of passion defense. I'd like to spend most of my time on that issue, the so-called Lasko error. There's a striking contrast between the State's arguments before this Court and the grounds on which the State appellate court actually upheld this conviction. Can I ask you a question that's troubling me about the so-called Lasko error? Of course, the fact that there's an error of State law isn't enough. We need an error of Federal law, and it needs to be an error of Federal law as pronounced in a Supreme Court decision. Help me see where this is a violation of clearly established law as announced by the United States Supreme Court. I think there are two different routes to look on, and to my view, the most straightforward one is Mulaney v. Wilbur. Because basically, between Mulaney v. Wilbur and Patterson v. New York, you have two different constructs of how a State might structure its grounds for manslaughter. Under Mulaney and his progeny, if a State structures its heat of passion or whatever mitigating ground such that it negates an element of murder, as was the case with the main homicide law in Mulaney itself, then instructions which dilute the prosecution's burden of overcoming that ground beyond a reasonable doubt violate due process. Conversely, if a State such as New York and Patterson structures the law such that there is some circumstance entirely extraneous from the elements of murder as defined in that statute, the State may permissibly allow a lesser burden. I think I'm with you to the extent that I look at California law as a Mulaney jurisdiction. Yes, Your Honor. I think California Supreme Court has viewed it as a Mulaney jurisdiction. I think the State has the burden where heat of passion is at issue of proving absence of heat of passion. I'm with you. But that's not a full description of the instructional error. The instructional error said, well, heat of passion becomes relevant for manslaughter only if there's no intent to kill. And the problem is that the instruction said that there's an intent to kill requirement before you get manslaughter, which is not a heat of passion problem. It's an additional requirement that they put into the instruction that's not present in California law. Where is there? How do I get Supreme Court case law that tells me that that is a Federal error to include in the instruction an element of the offense that's not there? Because the effect of that instruction was to erroneously limit the scope of the malice negating factor of heat of passion. And I think that the U.S. Supreme Court — And thereby to relieve the State of the burden of proving it? Yes. Thereby to relieve the State of its burden of proving malice of forethought beyond a reasonable doubt. Because by misdescribing the circumstance which negates the element, the error is tantamount to a misinstruction on the element itself. And interestingly, the U.S. Supreme Court itself essentially acknowledged that point in another case, another California case, which went through this Court, Middleton v. McNeil. Now, in Middleton v. McNeil involved an error in the imperfect self-defense ground for negating malice. The State Appellate Court and ultimately the U.S. Supreme Court held that although there was an isolated error in the instructions, the instructions as a whole ultimately did not mislead the jury. But the Supreme Court, in its opinion, agreed with the premise that a misinstruction on a malice-negating factor would pose a due process issue. And I think that it is a straightforward application of Mulaney that if — in fact, putting Mulaney together also with U.S. v. to correct instructions on the elements and describing a misdescription of an element as a due process violation. Together, Mulaney and Godin compelled the conclusion that if a state court misdescribes a circumstance which negates malice, that is a due process violation tantamount or equivalent to a misdescription of the element itself because it necessarily reduces the prosecution's burden of overcoming that malice-negating factor by proof beyond a reasonable doubt. So the Mulaney or the Mulaney and Godin ground would be my first ground for why this is clearly established law. I think I hear you saying that the problem starts here because the prosecution's burden of proof got watered down. It got watered down. But the instructions specifically say with respect to murder, either speed of murder, that the government must prove all of the elements of the offense and must negate and has the burden of negating heat of passion. Wasn't there a specific instruction to that effect? Yes, Your Honor. So how is the burden of proof watered down? It is watered down because an accurate, reasonable doubt instruction becomes meaningless if the substantive instructions inaccurately describe what it is that the government must prove beyond a reasonable doubt. And in this case, those instructions inaccurately stated that the only circumstance in which heat of passion would negate malice would be in the case of an intentional killing. And that concept pervaded the instructions such that it dilutes the prosecution's reasonable doubt burden in the identical way that you would have such an error in a case where the court gave absolutely correct, reasonable instructions on the reasonable doubt burden of proof but misdescribed an element of the charge defense. Indeed, it makes it. Under your way of looking at it, it totally eliminates the necessity of the prosecutor to prove, with respect to manslaughter, absence of heat of passion at all. It's totally irrelevant. That's right, Your Honor. So long as you've got a case in which intent to kill is there, the prosecutor has no burden of proof whatsoever with respect to absence of heat of passion for manslaughter. Right. If I understand your question correctly, yes, Your Honor. Because the instructions limit it anomalously, as we now know because of the intervening last opinion, anomalously limited this defense to intentional killings if the jurors found, as they likely did here, this was an implied malice killing, that the instructions left this defense unavailable. Now, this is a 10-minute case because the clerk's office, in its wisdom, called it a 10-minute case. I'm not sure it's a 10-minute case. Can we move on to the question of harmless error, assuming that we were to find that this is a violation of federal laws announced by the United States Supreme Court? Talk about harmless error. Don't worry. You'll get your chance and so on. Okay. Absolutely, Your Honor. The only ground on which the state court found harmless error was essentially a weight of the evidence ground. It viewed it as not reasonably probable that there would have been a better verdict. Now, I've already addressed the legal framework in the briefs as to why that's both contrary to an unreasonable application of federal law. Let me take on more directly in regard to the circumstances of this case. But let's just assume we're dealing with Brecht as our standard for harmless error. Why is it not harmless under Brecht? Absolutely, Your Honor. There's no question that this was a tragic, deplorable case. But it's also, frankly, a case in which many, many jurors would have returned a manslaughter verdict rather than a murder if they had been properly instructed. And how do you know that? Because, Your Honor, let's look at the circumstances. And partly, I'm calling upon the court to, in part, draw on its judicial experience and also, partly, recognition looking at case law of the sort of scenarios that the state would prefer to say, oh, this was just a blocking the street dispute. The events had moved way past that. The provocation wasn't about the blocking the street. The provocation, the relevant provocation, is the threats and the assault. Fluker and Wilson threatened to kick Darden's ass. Fluker admitted yelling out, we tear up this block, which she says meant fight. Gloria Edwards testified that one of them said, we're going to blow up your mother's house. Multiple witnesses testified to Darden reacting to such a threat and saying, no one's going to mess with my mother. No one's going to blow up my mother's house. All this, and then we have an assault, variously described as a push, a slap, a tussle, however one describes it. So we have this series of threats, including the one which really touched the live wire, which is the threat to blow up her mother's house. I submit that many, many people, under those circumstances, would react rashly and without deliberation and reflection. And that's what the – and that was the question that the heat of passion instructions posed for the jury. Well, of course. Not whether they would kill, but whether they would react rashly. I don't think there's any doubt that what a reasonable jury is very likely to find heat of passion. The question is whether or not they would have found implied malice, because if they're implied malice, they're up at second-degree murder. So in order for you to prevail, we have to think that there's a sufficient probability under Brecht that the jury would not have found implied malice, because that's what you need. No. Actually, I would disagree with that framework, Your Honor. In a way, we have prejudice only if the jury would have found, or there's a substantial risk that a substantial injury has influenced however one wants to articulate the probabilistic aspect of Brecht. The prejudice flows from the scenario in which the jury views this as a circumstance that otherwise it would be implied malice. Correct. An unintentional killing rather than an intentional one. And the circumstances would provide heat of passion, but due to the intent to kill requirement of the instructions, the jurors are blocked from returning a manslaughter verdict. So they are left with no alternative but an implied malice murder verdict, because out of all the instructions. Yeah, I understand that, but let me cut to the chase. In order for the jury to come back with a manslaughter verdict, they've got to find heat of passion, which I think is very easy to find. Yes, Your Honor. But they've also got to find absence of intent to kill. That's right. And there's a lot of evidence of intent to kill. I mean, she's several feet away. She pulls her gun out, shoots her at point blank range in the neck, and she dies. It's pretty hard to argue that there's no intent to kill when you do that. Your Honor, I think there are two points in that. The most powerful evidence which would otherwise support intent to kill, the so-called remarks, is evidence which, as the State Appellate Court acknowledged in the context of addressing a different error, which is not part of this appeal, the jurors apparently found that testimony non-credible. Looking at the mixed verdicts, in particular the acquittal of first degree, as well as the separate verdict acquitting on the separate assault count on Antonio Williams, which similarly rested on Antonio Cummings, which similarly rested on Cummings and Fluker's testimony, we can infer from those mixed verdicts that the jurors did not believe the Downey and Bishop remark. So that just gets down to the circumstances you're describing, which is it was a shooting. It was also a shooting under a real pressure cooker of a situation in the sort of circumstance that could readily induce someone to react quickly and without a lot of thought. And given that we know that, we know they rejected premeditation, and with it what would otherwise have been the more powerful evidence of intent to kill. I think that a scenario like this coming out of a fight, of a confrontation, of a frenzied situation, the human mind is such that a precipitous reaction like that can – a defendant can well resort to that without consciously formulating the specific intent to kill. I think this is, frankly, the sort of scenario in which if there were to be a murder verdict, it would more likely rest on implied malice than on expressed malice. Roberts. Why don't we hear from the State and then we'll give you a chance to give a short response. Absolutely, Your Honor. Thank you. Good morning. May it please the Court. Christopher Grove for Respondent. Your Honor, I'd first like to address the heat of passion question as whether that definition is correct under State law. From what I understand the Alaska lawyer and the argument the appellant is making, it's not that heat of passion is misdefined. It's not that the description of what constitutes heat of passion is erroneous. It's that when the jury finds heat of passion and then wants to look to voluntary manslaughter, it has to look to – it has to find an intent to kill. And so our position is that this really – the error here, Lasko error, affects the definition of voluntary manslaughter, not heat of passion. As the Court has pointed out, the instructions specifically tell the jury that the people have to prove all the elements of murder and that the death did not occur in the heat of passion or upon a sudden quarrel. And this instruction also says even if – even if the murder – or excuse me, even if the homicide is intentional, the jury – the prosecutor still has to negate heat of passion. How about this argument? And I confess I'm having trouble with it. This is tricky because it takes a couple of logical steps to get where Ms. Darden wants to get. But if you have a jury that is not inclined to find intent to kill, the effect of this instruction as to voluntary manslaughter entirely relieves the state of the burden of proving an absence of malice because it's totally irrelevant, given that the jury is going to find intent to kill. So putting that in totally relieves the state of the burden on – on heat of passion. Isn't that right? Your Honor, no, we don't disagree with that because the instructions on heat of passion tell the jury you cannot find murder if you find heat of passion. The heat of passion negates malice. It is true that when the heat of passion instructions discuss voluntary manslaughter or reducing the – But can't they find second-degree murder if there's – based on – Not in my reading of the instructions, Your Honor. It says if – if the homicide occurs through heat of passion. Could you read the second-degree – the instruction as to second-degree murder? Yes. The instruction on second-degree murder includes both malice and improper act. And where are we? So just so I can read along with you. That is Calgic. Well, it's at CT-190 – excuse me, ER-199. It's Calgic 831. Okay. Hold on. Hold on. Let me find it. 199 ER. Hang on, hang on. No. Murder in second-degree is – No, no, I'm saying no because I can't find it at ER-199. Where should I look? I can't help you today. I've got volume one. Yeah, yeah. Okay. And where do I look in volume one? It should be at page 199. No, volume one doesn't go up to 199. Well, I looked in volume two, and 199 is transcript of hearing. Can you help? I'm sorry, Your Honor. I'm looking at the wrong number. It's ER-158. It's ER-199. Oh, it's ER-158. Okay. I apologize for making you go through that.  I'm now with you. It was my mistake. I'm looking at the wrong number, Your Honor. Okay. But in any event, it does describe actual or expressed malice and implied malice, and that would be three. The act was deliberately performed with a conscious knowledge of the danger to and with conscious disregard for human life.  So the second degree does not include any specific reference to heat of passion? That's my understanding, Your Honor. I certainly don't see it here on this page, and you can tell me. I'm sure your adversary can tell me otherwise if I'm mistaking or missing something. Okay. So that means that heat of passion under these instructions is totally irrelevant as to any of the charges. First degree, second degree, voluntary manslaughter? No, Your Honor. At least the jury understood the instructions. No. No, Your Honor. What it means is the heat of passion instructions apply to murder, and heat of passion instructions tell the jury that heat of passion negates malice or negates malice of forethought, which is both implied and expressed malice. And then if the jury finds – I see. Negates malice. So it really is built into the second-degree murder definition. Yes, Your Honor. Well, that's where I thought I was. Okay. I'm with you. I'm sorry. And the instruction on heat of passion or Calgic 850, former Calgic 850, says that it negates malice, and even if an intent to kill exists, it's still not murder. You cannot find murder. And that is – that's part of our position, is that the heat of passion instructions correctly describe heat of passion and also tell the jury that you cannot find murder if you find heat of passion, and that the prosecution has to prove that the killing did not occur in the heat of passion. And, again, that's at Calgic – that's at 166. Okay. I think I led you in a circle. I apologize. But, Your Honor, there are some – there are references within these series of heat of passion instructions that talk about when an intentional killing occurs, and then they go on. But they don't say ignore these instructions unless you have an intentional killing. They just – it's – that's kind of a preface in these series of instructions. So, essentially, we're talking about, and the California Supreme Court has held it, that the LASCO error is error in the voluntary manslaughter instructions, which involves a less-included offense. With respect to the prejudice, and counsel has pointed this out, the only – the only way that the LASCO error could be prejudicial is if a jury could find an unintentional killing, but then were confused about the instructions and decided to find murder, second-degree murder, instead of voluntary, because of this. Could you say that one more time? The only possible prejudice from LASCO error is when a jury finds an unintentional killing and finds malice. And that having found an unintentional killing and found malice, the jury, rather than acquit, decides to convict of murder. See, the error in the LASCO error is – I don't think that's right, but correct me where I'm – let me see what I think is going on, and you can correct me where I'm missing it. In order to convict of involuntary – excuse me, a voluntary manslaughter, the jury has to find an unintentional killing, correct? No, an intentional killing. That's the problem with the California voluntary manslaughter instructions. It's – this says an element, the killing was, you know, with the intent to kill. It's – counsel has it in his notes. Right, right. Well, the problem would be that the LASCO court found is that the jury could then reject voluntary manslaughter because they found the killing was unintentional. And so they say, well, we can't find voluntary manslaughter because we have an unintentional killing. And yet we believe that there – this killing occurred in the heat of passion. So what do we do? We can't go to voluntary because that has an element that we don't find. Right. So what do we do? Well, the argument that the appellate makes is the jury would then go to murder. And our argument is, no, they wouldn't. They would have quit. Or if they were going to – but in any event, that they would not – they wouldn't go to murder. Let me try this again. In order to find voluntary manslaughter under the proper instruction, what does the jury have to find? The jury would have to find heat of passion. Yes. And a killing. A killing. It doesn't have to be intentional. That's correct. I mean, that's what I'm after. And given the instruction, they were prevented from applying that standard. If they – correct. If they followed the voluntary manslaughter instruction. So if this jury thought that the killing was intentional. There would be no prejudice. There would be no prejudice. But if this jury thought that this killing was unintentional and done in the heat of passion, they would have come back with voluntary manslaughter. But if that's what they thought, this instruction prevented them. So you've got to convince us that there is a low enough risk that that's what the jury thought. Well, of course, Your Honor, our first position is that since the instructions clearly say, if you've got heat of passion, you don't have malice, you can't find murder, that the jury would not have gone up to murder. But having said that, we also believe that the evidence in this case is overwhelming that the defendant had the intent to kill. The defendant, granted, was – the victim and her friend threatened to beat her ass and they exchanged – excuse me – exchanged insults. But the defendant walked towards the victim and her friend with this loaded firearm in her purse. The defendant then, when the victim pushed her or slapped her, reached into her purse, pulled out her gun, extended her arm, and shot her in the back of the neck. Under those circumstances, the jury would not have found that this was an unintentional killing. Certainly, a jury would not have said, we just can't decide whether she had the intent to kill. We believe she acted in the heat of passion. But we're going to convict her of murder. That simply, in these circumstances, would not have happened. Our argument is simply, given the strength of the evidence of intent to kill, no jury would have decided, we believe this person acted in the heat of passion, but we're going to ignore those heat of passion instructions that prevent them from going to murder. We're going to go to murder. Thank you. Just with respect to this comment, I'm going to down me some bitches or something like that. The court of appeal did not reject that testimony, but they didn't need to rely on that. Unless the Court has a question. Thank you, Your Honor. Thank you. Response? Yes, Your Honor. I think we've pretty much covered the ground, but if you want a minute, you've got it. Well, Your Honor, seeing as I've made a lot of criticisms of the State Appellate Court, let me address one point where the State Appellate Court got it right. The State Appellate Court recognized these instructions as a whole did mislead the jury in exactly the way Your Honor articulated, and this is at ER 91. They specifically, in response to the identical arguments that have been raised by the Attorney as a whole, the jurors wouldn't have been misled. The Appellate Court responded, if the jury conscientiously followed the instructions in this case and determined Darden had not intended to kill, it would necessarily have excluded first degree murder and voluntary manslaughter. The only available verdict for an unintentional killing, other than acquittal, was implied malice, second degree murder. So I think the question really does move from these instructions did mislead the jurors, and the appropriate prejudice question is the direct question of whether this curtailment of the malice negating factor affected the verdict, whether it had a substantial and injurious influence. And we know something else about this case. The jurors thought it was a tough case. I've identified in the briefs a series of close case factors. They asked for readbacks of all the precipient witnesses' testimony. They deliberated for three days. And, as mentioned earlier, their mixed verdicts suggest that they disbelieve the testimony of two jurors. Sometimes I mix cases up. Is this the case where the counsel got sick in the middle of closing argument? Yes, Your Honor, that's right.  That's correct, Your Honor. So it's not surprising they'd ask for some readback. I agree it's the readback, Your Honor. One final point to bear in mind is this Court is assessing how the jurors might have resolved the conflicting evidence inferences, and that is the Sixth Circuit's opinion in Barker v. Eukums, which this Court, in turn, has approved in Pirtle, which is that a reviewing court under the guise of harmless error analysis may not usurp the jury's function and essentially come up with its own weight of the evidence analysis. And I think I covered that in the briefs. Okay. So unless the Court has any questions about any of the issues. I think not. Thoroughly argued? Well argued by both sides. Thank you, Your Honor.
judges: Goodwin, W. Fletcher, Holland